Oswill M. Cummings, Jr. v. Commissioner.
Cummings v. Commissioner
Docket No. 3183-65.
United States Tax Court
T.C. Memo 1968-52; 1968 Tax Ct. Memo LEXIS 245; 27 T.C.M. (CCH) 273; T.C.M. (RIA) 68052; March 29, 1968. Filed S.P.Keith, Jr., P.O.Box 8332, Birmingham, Ala., for the petitioner. Homer F. Benson, for the respondent. 274 TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in income tax and additions to tax as follows: Additions to Tax
Sec. 293(b)
I.R.C. 1939
Sec. 294
Taxable
Sec. 291(a)
or sec. 6653(b)
(d)(1)(A)
Sec. 6654(a)
Year
Deficiency
I.R.C. 1939
I.R.C. 1954
I.R.C. 1939
I.R.C.1954
1944
$1,011.63
$252.91
$ 505.82
$ 91.04
1945
1,292.48
323.12
646.24
116.32
1946
1,920.77
480.19
960.39
172.87
1947
2,483.27
620.82
1,241.64
223.49
1948
1,637.79
409.45
818.90
147.42
1949
1,038.22
259.56
519.11
93.45
1950
2,027.22
50 6.81
1,013.61
182.45
1951
2,116.42
529.11
1,058.21
183.20
1952
2,067.89
516.97
1,033.94
178.81
1953
3,064.75
766.19
1,532.38
268.53
1954
3,773.84
1,886.92
339.10
1955
5,045.01
2,522.51
$137.73
The issues for our determination are: (1) Whether Oswill M. Cummings, Jr. (hereinafter sometimes referred to as petitioner), *247 received taxable income during the years 1944 through 1955 and, if so, what amount; (2) Whether any parts of the deficiencies, if so found, were due to fraud so as to make the additions to tax under section 293(b), I.R.C. 1939, and section 6653(b), I.R.C. 1954, applicable; (3) Whether petitioner's failure to file income tax returns for the years 1944 through 1953 was due to reasonable cause and not willful neglect so as to make the additions to tax under section 291(a), I.R.C. 1939, improper; (4) Whether petitioner is subject to the additions to tax under section 294(d)(1)(A), I.R.C. 1939, for failure to file a declaration of estimated income tax for the years 1944 through 1954, and under section 6654(a), I.R.C. 1954, for his failure to pay estimated income tax for the year 1955; and (5) Whether petitioner is entitled to claim his wife as a dependency exemption for the taxable years. Findings of Fact Oswill M. Cummings, Jr., is an individual who was married throughout the years 1944-1958. Petitioner resided in Tuscaloosa, Alabama at the time the petition herein was filed. During the taxable years 1944 through 1958, petitioner owned *248 the Tuscaloosa Motor Express (hereinafter referred to as the Motor Express or the business), a sole proprietorship which operated a motor-truck line under a franchise granted by the Alabama Public Service Commission. During 1944 and through most of the year 1945, petitioner was stationed in Europe as an officer with the rank of major in the U.S. Army, Transportation Corps. While petitioner was absent from Tuscaloosa and in the armed services his business was operated on his behalf by his father, with some assistance from petitioner's wife who held his power of attorney. Sometime in 1945 petitioner returned from Europe and in 1946 he was officially discharged from the Army. From the time petitioner returned in 1945, through 1958, he personally conducted his business of hauling freight by motortrucks on a regular schedule between his principal place of business in Tuscaloosa, Alabama and Birmingham, Alabama. Occasionally, he would make unscheduled hauls to other cities both in and out of the State of Alabama. In the course of his business, petitioner maintained C.O.D. and interline accounts. The C.O.D. account was a standard "collect on delivery" account whereby the petitioner *249 at the time of the delivery collected the total cost of the goods plus the freight charges. The petitioners then deducted from this remittance his fee and freight charges and remitted the remaining amount to the sender-vendor. An interline account arose when petitioner hauled freight only a small portion of the total distance shipped. On such accounts petitioner would collect the total freight charges from the recipient of the shipment, deduct his hauling charge and remit the remainder to the prior carrier or carriers. In all these instances the total amounts 275 received were deposited in petitioner's business checking account. Petitioner executed checks for the reduced amounts and thereafter remitted these to the prior parties. In 1947 petitioner transferred to his wife the terminal buildings in Tuscaloosa, Alabama and in Birmingham, Alabama, which were then occupied and used in petitioner's business. Petitioner continued to use both properties in his business, with no rental charge paid to his wife. Petitioner did not file individual Federal income tax returns or pay income taxes for any of the years between 1944 and 1955. In addition, he failed to file declarations of estimated *250 tax for any of the years between 1944 and 1954 and he did not pay any estimated tax for the year 1955. Petitioner failed to maintain an adequate set of books or records from which his correct taxable income could be computed for any of the years in issue. At all times in question, petitioner filed periodic reports to the Alabama Public Service Commission and to the Interstate Commerce Commission. In the course of the audit of petitioner's income tax liabilities, respondent's agents asked petitioner for his cancelled checks, deposit slips, bank statements, and other documents from which his income could be ascertained for any of the taxable years between 1944 and 1955. Petitioner stated he did not possess any records and was uncooperative with respondent's agents in their investigation. Respondent's agents determined from the records of the City National Bank of Tuscaloosa, Alabama that during the taxable years petitioner made or had made for him the following deposits to his business and personal bank accounts, his savings account, and the savings account of his minor son, Jackie Cummings, as shown in the following schedule: Calendar
Tuscaloosa
Personal
Savings
Minor Son's
Total
Year
Motor Express
Checking
Account
Savings Acct.
Deposits
1944
$125,128.83
$7,377.57
$132,506.40
1945
142,318.18
8,814.03
$2,500.00
153,632.21
1946
212,310.67
8,691.61
1,100.00
222,102.28
1947
257,36 9.90
2,720.00
260,089.90
1948
215,994.91
3,145.90
219,140.81
1949
164,593.78
3,245.00
167,838.78
1950
239,550.50
3,431.00
242,981.50
1951
223,874.25
3,260.00
227,134.25
1952
208,196.26
3,065.00
211,2 61.26
1953
266,805.13
2,940.00
269,745.13
1954
322,228.76
3,188.00
325,416.76
1955
368,152.84
4,202.12
$700.00
373,054.96
*251 The above schedule sets forth the total bank deposits for each of the taxable years, which may include nontaxable items deposited to the above accounts. Respondent did not attempt to eliminate any of these nontaxable amounts from the bank deposits as he was unable to determine from the available information what amount or amounts should have been eliminated for this reason. Due to the absence of adequate records, respondent resorted to another means for determining petitioner's taxable income during these years. First, respondent computed petitioner's income and profit from petitioner's business income for the years 1956, 1957, and 1958 (years for which adequate records existed), adjusting it to eliminate unusual income items. He then determined the ratio between petitioner's average computed adjusted income and profits and petitioner's average adjusted total bank deposits for the same years. These bank deposits were also adjusted by respondent in order to eliminate non-income receipts. This ratio, 4.58435 percent, was then applied to the total bank deposits for each calendar year in issue (1944 through 1955) in order to approximate petitioner's income for these years. Respondent *252 determined petitioner's net profit and income to be as follows: Year
Net Profits and Other Income 4.58435 Percent of Adjusted Bank Deposits
1944
$ 6,074.56
1945
7,043.04
1946
10,181.95
1947
11,923.43
1948
10,046.18
1949
7,694.32
1950
11,139.12
1951
10,412.63
1952
9,684.96
1953
12,366.06
1954
14,918.24
1955
17,102.15
Ultimate Findings of Fact Except as indicated hereafter, petitioner has not shown error in respondent's 276 determination of petitioner's net profit and income for any of the years 1944 through 1965. Part, if not all, of the underpayments in each year was due to petitioner's fraud with an intent to evade the tax. Petitioner has not shown that his failure to file income tax returns for each of the years 1944 through 1953 was due to reasonable cause. Petitioner has not shown that his failure to file the declarations of estimated income tax for each of the years 1944 through 1954 and his failure to pay estimated income tax for the year 1955 were due to reasonable causes. Petitioner has proven he is entitled to an exemption for his wife in each of the taxable years. Opinion Deficiencies We are faced with a *253 frustrating record. No facts were stipulated and the parties have apparently been at loggerheads even to the time of trial. Initially, the question is whether the respondent properly determined the income tax deficiencies of petitioner. It is well established that the Commissioner may use any reasonable method to determine deficiencies where the petitioner fails to maintain records from which his income can be ascertained. Burka v. Commissioner, 179 F. 2d 483, 485 (C.A. 4, 1950), affirming a Memorandum Opinion of this Court; Kenney v. Commissioner, 111 F. 2d 374, 375 (C.A. 5, 1940), affirming 38 B.T.A. 1531. Moreover, respondent's determinations are presumed to be correct and the burden of disproving his determinations lies with petitioner. Rule 32, Tax Court Rules of Practice; Bryan v. Commissioner, 209 F. 2d 822, 825 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court, certiorari denied 348 U.S. 912 (1955). Petitioner's main argument is that respondent's determinations are arbitrary and excessive and for this reason the presumption of correctness should not attach. In support, petitioner attempts to show *254 that respondent's manner of calculating the deficiencies was erroneous. Petitioner makes this assertion even though he concedes that respondent's use of a bank deposit method would be proper in certain circumstances. Cf. Doll v. Glenn, 231 F. 2d 186 (C.A. 6, 1956); Boyett v. Commissioner, 204 F. 2d 205, 208 (C.A. 5, 1953), affirming a Memorandum Opinion of this Court [Dec. 18,198(M)]. The petitioner here failed to maintain an adequate set of books, and we think it is entirely proper for respondent to employ a bank deposit method in calculating deficiencies for the years 1944 through 1955, inclusive. Louis Halle, 7 T.C. 245 (1946), affd. 175 F. 2d 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949, 70 S. Ct. 485 (1950), and U.S. v. Doyle, 234 F. 2d 788 (C.A. 7, 1956). Respondent totaled the amount of bank deposits during the years 1956 through 1958, but eliminated all nontaxable deposits such as interline accounts, C.O.D.'s, and loans. After making these adjustments, respondent compared the average net bank deposit figure with petitioner's average net income for 1956 through 1958, which had also been *255 adjusted to reflect nonrecurring income items. Respondent thereby determined that for this period net income and profits represented 4.58435 percent of these net bank deposits. Respondent then totaled the daily bank deposits made by petitioner during the years 1944 through 1955 and applied this percentage figure to each year's total. The amount computed was determined to be the amount of petitioner's taxable income for each of the years in issue. Initially, petitioner argues that the amount of total bank deposits for the period 1944 through 1955 should have been adjusted to eliminate all nontaxable items as was done during the period 1956 through 1958, years not before us. He argues that by failing to do this, respondent was not consistent in calculating the deficiencies. Petitioner asserts that failure to make these adjustments demonstrates respondent's lack of care and thus, that respondent's determinations are arbitrary and excessive. He therefore concludes that the determinations should not be afforded the luxury of presumptive correctness. Despite these contentions, the burden of proving the respondent's determinations to be arbitrary still remains with petitioner. Respondent *256 did not deliberately omit adjustments for non-income items in the daily bank deposit totals for the taxable years. For those years he had no information from which he could have 277 ascertained the amount of deposits that represented nontaxable income. Petitioner argues that the bank deposits should be adjusted downward by 50 percent in order to eliminate the C.O.D. and interline accounts. Petitioner, however, has failed to prove this amount by any evidence other than by his own self-serving statements. We are not obliged to give his testimony full credence and we cannot do so on this record. Traum v. Commissioner, 237 F. 2d 277, 280 (C.A. 7, 1956), affirming a Memorandum Opinion of this Court. However, we do think some adjustment for C.O.D. and interline accounts should be made, and, bearing heavily against the petitioner, we find that a 10 percent figure is reasonable. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930); Rogers v. Commissioner, 248 F. 2d 452 (C.A. 7, 1957), affirming a Memorandum Opinion of this Court. This adjustment can be reflected in a Rule 50 computation. Petitioner also argues that in the years 1949, 1951, and 1952, *257 the bank deposits totals included loans in the amounts of $6,000, $15,000, and $10,000, respectively. Petitioner has adequately proven that the loans were in fact made. However, we find no evidence from which we can conclude that the amounts of these loans were ever deposited to petitioner's account. We hold that the bank deposits need not be adjusted by the amounts of these loans. Next, petitioner argues that respondent's determination was totally erroneous as business records were available from which respondent could have ascertained petitioner's income. To prove this, petitioner presented at trial some "papers" and other fragmentary foolscap summaries which purported to represent the actual income and expenses of his business for the years 1949 through 1953. This "evidence," which in some respects varied from other "evidence" offered by petitioner, was allegedly discovered by petitioner just two or three days prior to the trial. It indicated, contrary to petitioner's argument that he had no income in the years in issue, that the income of the business was as follows: Salaries Paid
Cummings
Year
Business Profit
During Year
1949
$4,063.35
1950
4,996.54
1951
5,583.41
$2,600.00
1952
6,627.81
2,600.00
1953
7,393.57
*258 Petitioner argues, relying on Aaron Samuelson, Executor, 10 B.T.A. 860 (1928), that this "evidence" should be accepted as a true representation of petitioner's income for these years. Petitioner's reliance upon Samuelson is inappropriate. We are not convinced, as the Court apparently was in Samuelson, that the summaries and other papers introduced by petitioner by any means establish all the income which should have been reported by petitioner. In Samuelson, the working papers were accepted because the regular books and records had unfortunately been lost or destroyed. The Court there was convinced that the summary papers fairly represented the operations of the business. They were records audited every month by independent public accountants, copied directly from the books, and served as a basis of the accountants' reports upon which the Court was willing to place reliance. However, in the instant case, petitioner has not shown that he ever maintained a proper set of books and records for any of the years in issue; and this despite the testimony of his bookkeeper that he had counseled petitioner to initiate proper recordkeeping procedures. The documents presented *259 were not working papers drawn up by independent public accountants in connection with a monthly audit of the books and records. They were simply an unacceptable and unreconciled set of numbers totaled by petitioner's bookkeeper, purportedly based on checkbooks, waybills, etc. Petitioner next argues that the income determined by respondent for the years 1944 through 1955 would actually be less than properly allowable additional depreciation which respondent did not allow. In effect he reasons that the deficiencies must be erroneous because the business actually lost money in almost every year. Petitioner attempts to support this argument by a schedule drawn up, apparently after the fact, by one of his employees as shown below: Equipment
Year
Depreciation
1945
$ 1,989.41
1946
6,254.01
1947
10,376.26
1948
12,029.25
1949
10,788.61
1950
11,079.74
1951
17,259.39
1952
15,641.98
1953
15,220.76
1954
14,268.97
1955
16,245.90 278 This schedule shows petitioner in possession of no less than 18 personal automobiles on which depreciation was calculated in 1955 all of which, without further proof, petitioner claims were used in the business. Petitioner, *260 in calculating the depreciation expense, used a six-year life. It is apparent that the depreciation shown on the schedule was erroneously computed; for, although using a six-year life, petitioner calculated depreciation for the year 1955 on equipment purchased in 1945, 1946, and 1947. In addition, petitioner himself offered other evidence purportedly showing business income in the years 1949, 1950, and 1951, and for these years his depreciation was shown to be $5,953, $6,350, and $7,600, respectively. However, on the schedule, which the petitioner presently wishes us to accept, the depreciation expense totals are $13,411, $14,273, and $20,453, respectively, for the same years. The latter schedule was not prepared in the regular course of business and does not possess the inherent truthfulness generally surrounding a business record. Petitioner failed to present the underlying documents from which the schedule was made. We are not bound to accept as conclusive the estimates of petitioner's bookkeeper, and we do not. See Burka v. Commissioner, supra. Alternatively, petitioner argues that during 1944 and a portion of 1945, the petitioner was attached to the United States *261 Army, stationed in Europe. He reasons that as he was not in the United States during this time, and even though the business might have earned income in that period, he was not required to recognize this as his income as he did not earn it. We agree that while petitioner was stationed in Europe during 1944 and a major portion of 1945, he probably did not work at his business. Nevertheless, petitioner's reasoning is faulty. The fact is that petitioner owned the business as a sole proprietor. It does not matter whether or not he personally took part in its daily operation. The important issue is whether or not he was legally entitled to the business income. If so, the income is his and he is taxable on it. Petitioner has not presented evidence sufficient to overcome the presumption of correctness which attached to respondent's determination. We hold that even for the time petitioner was stationed in Europe the income which was earned by the business was petitioner's and that he is taxable on it. Lastly, petitioner argues that he should be allowed an exemption for his wife for each year here in question. E.g., section 25(b)(1)(A), I.R.C. 1939, as amended in 1948, and section 151(b), I.R.C. *262 1954. We hold that there is enough evidence in the record, though sketchy, to entitle petitioner to claim an exemption for his wife in each of the taxable years. Effect for this can be given in the Rule 50 computation. Additions to Tax Respondent also determined that in addition to the deficiencies, petitioner is guilty of fraud with the intent to evade the tax and therefore he is liable for the additions to tax under section 293(b), [1] I.R.C. 1939, and section 6653(b), [2] I.R.C. 1954. To prevail respondent cannot rely upon the presumption of correctness of the deficiencyy determinations above, but must bear the burden of proving fraud, section 7454(a), I.R.C. 1954; Rule 32, Tax Court Rules of Practice; Cefalu v. Commissioner, 276 F. 2d 122 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court; Arlette Coat Co. 14 T.C. 751 (1950), and this must be proven by "clear and convincing evidence." M. Rea Gano, 19 B.T.A. 518 (1930); Carter v. Campbell, 264 F. 2d 930 (C.A. 5, 1959). *263 We believe that petitioner knew that he was obligated to file a tax return at all times in question. He operated a going business and apparently had a reasonable amount of education and business acumen. 279 Petitioner, as discussed in the facts, was an officer with a rank of major in the U.S. Army during World War II and subsequent to his return ran a business which had average gross revenues of over $225,000 per year (from 1944 to 1955). It is inconceivable that petitioner, a person required to file specific financial reports with the Alabama Public Service Commission and the Interstate Commerce Commission, did not believe he was also required to file a Federal income tax return. As is usual in fraud cases the direct evidence does not disclose what petitioner's intention was. This must be ascertained from the surrounding facts, considering the normal and reasonable inferences therefrom. M.Rea Gano, supra; William C.De Mille Productions, Inc., 30 B.T.A. 826 (1934). Petitioner's failure to file any return at all importantly indicates fraud. Albert Gemma, 46 T.C. 821 (1966); Charles F. Bennett, 30 T.C. 114 (1958); M. Rea Gano, supra. *264 Petitioner's failure to file cannot be excused as mere inadvertence where, as in this case, petitioner was an intelligent man, the amounts involved are significant, the omissions occurred over a long period of time, and petitioner failed to give a reasonable explanation. See Louis Halle, 7 T.C. 245 (1946), affd. 175 F. 2d 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949, 70 S. Ct. 485 (1950); Myrtle Berlin [Dec. 26,789], 42 T.C. 355 (1964); Kalil v. Commissioner, 271 F. 2d 550 (C.A. 5, 1959), affirming a Memorandum Opinion of this Court; J. K. Vise, 31 T.C. 220 (1958), affd. 278 F. 2d 642 (C.A. 6, 1960); Abraham Galant, 26 T.C. 354 (1956); Charles A. Rogers, 38 B.T.A. 16 (1938), affd. 111 F. 2d 987 (C.A. 6, 1940). In addition, petitioner failed to maintain a proper set of records from which his correct income could have been ascertained. This too is another factor to be considered. Bryan v. Commissioner, 209 F. 2d 822 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court, certiorari denied 348 U.S. 912 (1955); cf. *265 Zeddies v. Commissioner, 264 F. 2d 120 (C.A. 7, 1959), affirming a Memorandum Opinion of this Court; Baungardner v. Commissioner, 251 F. 2d 311 (C.A. 9, 1957), affirming a Memorandum Opinion of this Court; Merritt v. Commissioner, 301 F. 2d 484 (C.A. 5, 1962), affirming a Memorandum Opinion of this Court. Petitioner also refused to cooperate with the internal revenue agents. In light of the above, this is another factor which we cannot ignore in determining whether petitioner was guilty of fraud. See Granat's Estate v. Commissioner, 298 F. 2d 397 (C.A. 2, 1962), affirming a Memorandum Opinion of this Court; and J. K. Vise, supra. Evaluating the acts of petitioner in accordance with the standard of evidence required and also taking into consideration petitioner's intelligence, experience, and abilities, we are convinced that petitioner was guilty of fraud with the intent to evade the tax. See E. S. Iley, 19 T.C. 631 (1952); and Charles F. Bennett, supra. We find respondent's additions to tax under section 293(b) and section 6653(b) to be proper.[3]
*266 Two issues remain for our determination. First, we must decide whether petitioner's failure to file his income tax returns for the years 1944 through 1953 was due to reasonable cause and not willful neglect so as to make the additions to tax under section 291(a), [4] I.R.C. 1939, improper. *267 With respect to this issue, petitioner has presented no evidence from which we could find respondent's determination to be erroneous. Petitioner relies solely on his argument that he did not have any taxable 280 income during the years in question and therefore the penalties are inappropriate. This is belied by the record. The facts show petitioner's gross income before deductions for all the years in issue exceeded $600 per year. Applying section 51(a), [5] I.R.C. 1939, petitioner was clearly required to file an income tax return for each of these years. The burden rests on the petitioner to prove that his failure to file was not due to his negligence, but to some reasonable cause. He has failed to carry his burden, and we uphold respondent's determination with respect to the additions to tax under section 291(a). Next, we must decide whether petitioner's failure to file a declaration *268 of estimated income tax for the years 1944 through 1954, and failure to pay estimated income tax for the year 1955, were due to reasonable causes and not willful neglect as to make the additions to tax under section 294(d)(1)(A), [6] I.R.C. 1939, and section 6654(a), [7] I.R.C. 1954, inapplicable. *269 Again, petitioner has presented no evidence, nor has he even attempted to take issue with respondent's determination on this question. Accordingly, we find for respondent. Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * * (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2). ↩
2. SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).↩
3. In holding petitioner liable for these additions to tax, we have not relied alone upon the presumption of correctness in favor of respondent's determination of deficiencies in tax.↩
4. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612 (d)(1). * * *↩
5. SEC. 51. INDIVIDUAL RETURNS. (a) Requirement. - Every individual having for the taxable year a gross income of $500 [$600, amended as of 1948] or more shall make a return, which shall contain or be verified by a written declaration that it is made under the penalties of perjury. * * *↩
6. SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * * (d) Estimated Tax. - (1) Failure to File Declaration or Pay Installment of Estimated Tax. - (a) Failure to File Declaration. - In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. * * * ↩
7. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. - In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 for the taxable year an amount determined at the rate of 6 percent per annum upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)). * * *↩