Michael K. and Karen JENSEN,
Petitioners,

v.

STATE TAX COMMISSION,
Respondent.

No. 910151.

Supreme Court of Utah.

July 23, 1992.

R. Paul Van Dam, Rick Carlton, Salt Lake City, for State Tax Com'n of Utah.

Michael K. and Karen Jensen, pro se.

STEWART, Justice:

This case is here to review a final decision of the Utah State Tax Commission affirming an amended audit against Michael and Karen Jensen for $344,419 in unpaid income taxes, penalties, and interest. We reverse in part and remand for further proceedings.

In early 1978, the Jensens filed a joint Utah income tax return for the year 1977 reporting wages in the amount of $4,512 and losses totalling $4,852 from two partnerships, Kinjak and Sound Management Association. The following year, Michael Jensen filed a 1978 return, but reported only his name and address, his status as a married person filing separately, his claim to three exemptions, and his signature. Every other line on the form was answered with the words "OBJECT: SELF INCRIMINATION." Karen Jensen did not file a 1978 return. Neither Michael nor Karen Jensen has filed a state income tax return since 1978.

On October 29, 1980, the Commission wrote Mr. Jensen, stating that it was unable to process his 1978 return because it lacked the information required by law. Mr. Jensen responded by letter dated November 29, 1980, asserting that because he was not required to file a federal income tax return, he was not required to file a state return.

Over three years passed without further correspondence. Then on March 8, 1984, the Commission sent the Jensens a letter stating that they had filed an unacceptable return for the year 1978 and that its records indicated that they had not filed income tax returns for the years 1979 to 1982. In separate letters dated March 14, 1984, Mrs. Jensen requested that the Commission delete her name from any correspondence because she had not worked outside the home for more than five years and Mr. Jensen stated that he was not required to file in Utah because the federal government had made no determination that he had taxable income. Mr. Jensen requested further information if the Commission had a contrary opinion as to his status.

On March 29, 1984, the Commission sent Mr. Jensen a letter again urging him to furnish acceptable Utah income tax returns for the years 1978 to 1982. The letter specifically referred to the Utah Code provisions which codify who is required to file and the penalties for not filing. Mr. Jensen responded that he had not been employed since 1977 and, by his reading of the Code, was not required to file. He asked what specific information the Commission desired. The Commission did not respond.

Six years later, the Commission learned through an informant that Mr. Jensen had sold a business and was in the process of selling his home and moving to Nevada.

On June 8, 1990, the Jensens were served a "Notice and Demand for Payment of Tax Under Declaration of Taxes in Jeopardy," stating that Mr. and Mrs. Jensen owed $16,608 in income taxes, interest, and penalties for the years 1978 to 1988. The Commission calculated the tax by multiplying their reported income for 1977 by a multiple of the consumer price index for each year thereafter. Pursuant to a writ of execution served with the notice, the Utah County Sheriff's Office seized two automobiles on the premises.

On July 6, 1990, the Jensens petitioned for redetermination. On the day of the scheduled hearing, September 5, 1990, the Collection Division served the Jensens an amended statutory notice stating that they owed $344,419 in income taxes, penalties, and interest for the years 1978 to 1988. The tax figure was based on information obtained from Gem Morris, Michael Jensen's former employee. The hearing on the notice was continued and eventually held September 28, 1990. On March 8, 1991, the Commission issued its findings of fact, conclusions of law, and final order.

## COMMISSION'S RULING

The Commission sustained the amended statutory notice of deficiency, which included $122,641 for unpaid taxes, $147,168 in penalties—a 100% penalty for fraud with intent to evade, a 10% penalty for failure to file, and a 10% penalty for failure to pay tax penalty—and $74,610 in interest to the date of the notice. The Commission found that Mr. Jensen had earned substantial amounts of income from Sound Concepts, a business he owned during the deficiency period. This was based on evidence that Mr. Jensen had cashed checks totalling at least $40,719 from the Jefferson Institute, a client of Sound Concepts, and on the testimony of McKinley Oswald, the new owner of Sound Concepts, that after the business was sold in January 1990, gross sales were approximately $23,453 in February and, after the addition of several new clients, $53,514 in March, and $40,403 in April. The Commission found that Mr. Jensen had kept no records indicating the

income realized from Sound Concepts, and because the Jensens had not produced evidence to the contrary, the Commission affirmed the tax deficiency.

The Commission affirmed the penalty against the Jensens for failure to file because no returns were filed for the years 1979 to 1988 and because the incomplete return filed for 1978 did not constitute a "filing." The Commission affirmed the additional penalty for failure to pay penalties because the Jensens simply had not paid them. Finally, the Commission affirmed the penalty for fraud with intent to evade, holding that the evidence showed the Jensens had the specific intent to evade tax and had committed fraud by intentionally failing to file returns as required by statute and failing to maintain adequate records documenting their income.

## ISSUES ON APPEAL

The primary issues on appeal are whether the Commission erred in (1) affirming the amount of income tax deficiency, (2) holding Mrs. Jensen liable for the assessed tax, and (3) affirming the penalty for fraud with intent to evade taxes. We also address whether this Court has jurisdiction to review the Commission's ruling because of the Jensens' failure to deposit the full amount assessed with the Commission as required by statute and whether the right to a jury trial should have been afforded the Jensens.

## DISCUSSION

### Standard of Review

Because the proceedings in this case were initiated after January 1, 1988, the Utah Administrative Procedures Act ("UAPA"), Utah Code Ann. §§ 63–46b–0.5 to –22 (1989 & Supp.1991), governs our standards of review. Utah Code Ann. § 63–46b–22(1) (Supp.1991).

### Jurisdiction—Open Courts Provision

Preliminarily, the Commission argues that because the Jensens failed to deposit the full amount of the assessed taxes, interest, and penalties with the Commission

prior to seeking appellate review, as required by statute, this Court lacks jurisdiction over the appeal. We disagree.

■ Section 59–1–505 provides, "A taxpayer who, after receiving a final decision from the commission in accordance with the other provisions of this part, desires to seek judicial review of that decision shall deposit the full amount of the taxes, interest, and penalties with the commission." Utah Code Ann. § 59–1–505 (1987).[1] The Jensens assert, and we accept, their inability to comply fully with the terms of § 59–1–505. Strict application of that section would therefore preclude judicial review of the Commission's final order in this case.

The Utah Constitution guarantees citizens access to the courts to protect certain individual rights. The open courts provision of the Utah Constitution, article I, section 11, states:

> All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

In *Industrial Commission v. Evans*, 52 Utah 394, 174 P. 825 (1918), this Court held that an employer was entitled to judicial review of a decision of the Industrial Commission that imposed liability on an employer for workers' compensation benefits. The Court reasoned that the question of ultimate liability is necessarily judicial and that under the open courts provision the employer was entitled to access to the courts to protect its property rights.

The Jensens are in a position similar to the employer in *Evans* and have the right to test the legality of their liability under the ruling of the Tax Commission in a court

of law. The requirement that they deposit the full amount of the deficiency assessed by the Commission is, on the facts of this case, an effective bar to judicial review. Thus, to the extent that § 59–1–505 precludes reasonable access to judicial review, it violates the open courts provision and is unconstitutional as applied. We make clear, however, that the statutory requirement is not unconstitutional in all cases. When a taxpayer is able to meet the requirement, the deposit must be paid.

### Jury Trial

■ The Jensens, citing article I, section 10 of the Utah Constitution, argue that they were entitled to a jury trial in the adjudication before the Commission. The right to jury trial under article I, section 10 extends only to actions that were triable to juries when the Constitution was adopted. *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.*, 795 P.2d 658, 661 (Utah 1990); *Hyatt v. Hill*, 714 P.2d 299, 301 (Utah 1986). The Commission's procedures here are solely creatures of statute and were not cognizable as civil actions at common law. *See Wickwire v. Reincke*, 275 U.S. 101, 105–06, 48 S.Ct. 43, 45, 72 L.Ed. 184 (1927). As a result, the Jensens were not entitled to a jury trial below.

### Income Tax Assessment

■ The Jensens make several arguments with respect to the assessment affirmed by the Commission. First, they argue that because the federal government has not assessed a taxable income against them, they owe no state income tax. We find no merit to this argument.

The Code imposes a tax on a Utah resident's federal taxable income with certain adjustments. Utah Code Ann. §§ 59–14A–5, –11 (1974); §§ 59–10–104, –112 (1987). Federal taxable income is defined by the Utah Code as taxable income under 26 U.S.C. § 63. Utah Code Ann. § 59–14A–10

---

**1.** The UAPA provision that entitles one to review of a final agency order in a formal administrative proceeding does not contain the deposit requirement of § 59–1–505. *See* Utah Code Ann. § 63–46b–16(2) (1989). UAPA, however, was enacted in 1987, the same year as § 59–1–505. We do not believe that by enacting § 63–46b–16(2) the Legislature intended to eliminate the deposit requirement of § 59–1–505.

(1974); § 59–10–111 (1987). Section 63 of title 26 of the United States Code, in conjunction with section 61, defines taxable income as all income from whatever source derived, including gross income derived from a business and compensation for services, such as fees, commissions, and fringe benefits. 26 U.S.C. §§ 61(a)(1), 61(a)(2), 63 (1988).

Although they assail the Commission's computation of the amount, the Jensens have not disputed that Mr. Jensen's business, Sound Concepts, produced income. Clearly, income derived from Sound Concepts is income under the above provisions. Thus, Mr. Jensen was required to file federal income tax returns, *see* 26 U.S.C. § 6012 (1988), and therefore required to file Utah income tax returns, *see* Utah Code Ann. § 59–14A–48 (1974); § 59–10–502 (1987).

■ The Jensens next argue that receiving a franchise or privilege to do business from the state is a prerequisite to the state's right to impose income tax liability and that because they received no franchise or privilege to engage in Sound Concepts, the state cannot tax the income from the business. We disagree.

It is well understood that a business need not be licensed or incorporated to generate income for its owner. The United States Code includes "Gross income derived from business" in its definition of gross income, with or without a license or certificate of incorporation. 26 U.S.C. § 61(a)(2) (1988). In short, the Commission's right to tax income is not dependent on whether a recipient of income has a privilege to do business or is incorporated.

The Jensens also argue that the amount of tax assessed by the Commission was in error because the methods used to arrive at the amount were improper. In essence, the Jensens argue that the Commission's finding lacks substantial evidence to support it. We agree.

When a person fails to file a return as required by law, the Commission is compelled by statute to complete the missing returns "from its own knowledge and from such information as it can obtain through testimony or otherwise." Utah Code Ann. § 59–14A–52(b) (1974); § 59–10–506(2) (1987). In the instant case, the Commission affirmed the $122,641 tax deficiency based on the testimony of a former Sound Concepts employee on the volume and sales of the business the month before it was sold; copies of at least $40,719 in cashed checks from the Jefferson Institute, a client of Sound Concepts; and the testimony of McKinley Oswald, who purchased Sound Concepts from Mr. Jensen, that gross sales were $23,453 during February 1990, the month after it was sold, and that gross sales were $53,514 during March 1990 and $40,403 during April 1990, after the addition of several new clients. From these figures, the Commission estimated Mr. Jensen's gross income for the year 1988 and computed his income for the years back to 1978 by reducing each year by a consumer price index factor. For example, the Collection Division found $297,500 in adjusted gross income for the year 1988 and $285,680 in adjusted gross income for the year 1987, which amount to roughly $24,800 per month in taxable income during 1988 and $23,800 per month in taxable income during 1987.

■ Because the amount of a tax deficiency is primarily a question of fact, we will sustain the Commission's finding if supported by substantial evidence when viewed in light of the whole record. Utah Code Ann. § 63–46b–16(4)(g) (1989); *First Nat'l Bank of Boston v. County Bd. of Equalization*, 799 P.2d 1163, 1165 (Utah 1990). Although the amounts of Mr. Jensen's yearly adjusted gross income assessed by the Commission appear similar to the figures obtained by testimony for the months following the sale of Sound Concepts, those figures pertained to gross *sales*, not for gross *profit* (i.e., sales less expenses). The Code assesses income tax only on adjusted gross income, which is defined as all nonexempt income less allowable deductions. *Christensen v. State Tax Comm'n*, 591 P.2d 445, 447 (Utah 1979). The amount of the tax deficiency, therefore, is significantly inflated and not based on a realistic evaluation of the evidence.

Thus, the Commission's finding is not supported by substantial evidence. On remand, the Commission must determine how much, if any, of the yearly amounts computed would constitute adjusted gross income as defined and then adjust the deficiency accordingly.[2]

■■■ Finally, the Jensens argue that the Commission erred in holding Mrs. Jensen liable for the income tax deficiency. We agree.

The Commission concluded that the Jensens were liable for Utah income taxes because both requirements for incurring tax liability—resident status and earning income—were unrefuted:

> There is no dispute in this case as to Petitioners' status as residents of Utah. Petitioners did not rebut any of the evidence introduced by Respondent indicating that Mr. Jensen earned substantial amounts of income during the audit period in question. Under the above provisions, therefore, Petitioners clearly are liable for Utah state income tax. The two requirements for incurring liability for this tax are that the taxpayer must be a resident of the state and must earn income within the state. Both of these facts in this case are unrefuted.

The Commission stated that the Collection Division assessed the tax liability against Mrs. Jensen because she benefitted from Mr. Jensen's income, but the Commission made no finding as to whether Mrs. Jensen earned any income during the period in question. Tax liability does not arise merely because one benefits from or is supported by someone else's income. Tax liability arises from the earning of income. *See* Utah Code Ann. § 59–14A–5 (1974); § 59–10–104 (1987). The finding that Mrs. Jensen benefitted from Mr. Jensen's income may be correct, but it is immaterial. Because there was no finding that Mrs. Jensen earned income during the period in

question, the Commission's ruling as to her is contrary to law.

■■■ The Commission seeks to justify the assessment against Mrs. Jensen on the ground that the burden was on her to prove that she was improperly included in the audit. Although it is unclear from its brief, the Commission apparently relies on Utah Code Ann. § 59–10–543 (1987), which provides that except for certain property transfers, penalties, and increases in assessments, "[i]n any proceeding before the commission under this chapter, the burden of proof shall be upon the petitioner."

The Commission's argument that this provision should be applied against Mrs. Jensen raises serious due process questions. When a recalcitrant or evading taxpayer refuses to file an income tax return and the Commission is therefore compelled to reconstruct financial data from available evidence to estimate the taxpayer's income, it is reasonable to shift the burden to the taxpayer under § 59–10–543 to show that the Commission's figures are incorrect. But to apply § 59–10–543 in that fashion, the Commission must first clearly establish that the taxpayer earned some taxable income and then show that its predicate for computing taxable income is not arbitrary or capricious.

Here, there is not even a modicum of evidence that Mrs. Jensen earned income during the period in question. That she earned some wages during part of the year in 1977 is simply not a reasonable basis for concluding that she earned income from Sound Concepts. The assessment against Mrs. Jensen must therefore be vacated.

### Fraud Penalty [3]

The Jensens argue that the Commission erred in assessing the 100% penalty for fraud with intent to evade taxes because there was no evidence of their dishonest intent to evade. We affirm the penalty as to Mr. Jensen. Our holding that the Com-

---

2. There was evidence of how much gross profit would be derived from sales at Sound Concepts. McKinley Oswald testified in the hearing before the Commission that in February 1990, the month after the business was purchased, his net profit was $3,879. Whether this figure repre-

sents a before- or after-tax profit, however, is not clear.

3. The Jensens have not assailed the penalties for failure to file and failure to pay tax penalties.

mission erred in assessing the deficiency against Mrs. Jensen makes it unnecessary for us to address whether she was guilty of fraud since the penalty for fraud with intent to evade is based on a percentage of the tax deficiency.

In assessing the 100% penalty, the Commission relied on Utah Code Ann. § 59–1–401 (1987), which provides: ˙

> The penalty for underpayment of tax is as follows:
>
> (a) If any underpayment of tax is due to negligence the penalty is 10% of the underpayment.
>
> (b) If any underpayment of tax is due to intentional disregard of law or rule, the penalty is 15% of the underpayment.
>
> (c) For intent to evade the tax, the penalty is the greater of $500 per period or 50% of the tax due.
>
> (d) If the underpayment is due to fraud with intent to evade the tax, the penalty is the greater of $500 per period or 100% of the underpayment.

Subparagraph (c) fixes a penalty for "intent to evade" taxes, and subparagraph (d) fixes a higher penalty for "fraud with intent to evade" taxes. The Commission found that the Jensens had intended to evade taxes and that they had committed fraud by intentionally failing to file valid returns and maintain proper records.

In 1978, the Code imposed a 50% civil penalty "[i]f any of the deficiency in tax ... is due to fraud." Utah Code Ann. § 59–14A–89(c) (1974). In 1987, this statute was renumbered § 59–10–539(3) and amended to refer to § 59–1–401 for the appropriate penalty. 1987 Utah Laws ch. 2, § 247. Under § 59–1–401(3)(d), the civil penalty for "fraud with intent to evade" is 100% of the deficiency.

▮▮▮ Because § 59–1–401(3)(d) provides only the amount of a penalty without regard to a particular type of tax, it cannot provide the substantive basis for penalizing the evasion of income taxes. The Commission's ruling that the Jensens committed fraud with intent to evade, therefore, cannot rely on this general provision, but rather must find some basis in the income tax chapter. We believe § 59–14A–89(c) (pre–1987) and § 59–10–539(3) (post–1987), which penalize a deficiency "due to fraud," provide that basis.[4]

▮▮▮ In the income tax arena, fraud is an actual intentional wrongdoing with the specific intent to evade tax believed to be owing. *Fahy v. Commissioner,* 43 T.C.M. (CCH) 387, 394 (1982). Tax fraud is a question of fact to be resolved by consideration of the entire record.[5] *Kotmair v.*

---

**4.** A criminal provision effective in 1978 levied a fine up to $1,000 and made it a misdemeanor for persons who, with intent to evade any tax or any requirement of this act, or any lawful requirement of the tax commission thereunder, shall fail to pay the tax, or to make, render, sign or verify any return, or to supply any information, within the time required by or under the provisions of this act, or who, with like intent, shall make, render, sign or verify any false or fraudulent return or statement, or shall supply any false or fraudulent information.... Utah Code Ann. § 59–14A–92(b) (1974). In 1983, this statute was amended to make the $1,000 fine a civil penalty, but retained the sanction for a misdemeanor violation. 1983 Utah Laws ch. 266, § 3. In 1987, the statute was renumbered § 59–10–541(4) and amended to refer to § 59–1–401 for the appropriate civil penalty. 1987 Utah Laws ch. 2, § 249.

In *Silver v. Auditing Division of State Tax Commission,* 820 P.2d 912, 915 (Utah 1991), this Court held that the imposition of a civil penalty under § 59–14A–92(5)—the 1986 codification of § 59–14A–92(b)—required proof of fraudulent intent. We stated that the phrase "intent to evade" meant "a conscious desire to avoid a legal requirement with which the actor knows he or she is obligated to comply; it is not sufficient that the actor merely intends not to do that which the law, in fact, may require." *Silver,* however, dealt only with the meaning of "intent to evade" as used in that statute; it did not deal with the meaning of "fraud" as used in § 59–14A–89(c). As discussed in the text, tax fraud is an actual intentional wrongdoing *with* the specific intent to evade tax.

**5.** Courts have held that the taxing agency must prove income tax fraud by clear and convincing evidence. *Famularo v. Commissioner,* 47 T.C.M. (CCH) 948, 952 (1984); *Fahy,* 43 T.C.M. (CCH) at 393; *Cummings v. Commissioner,* 27 T.C.M. (CCH) 273, 278 (1968). Although the Utah Code places the burden of proof on the Commission to show that a petitioner is guilty of fraud with intent to evade taxes, *see* Utah Code Ann. § 59–10–543(1) (1987), it does not delineate the extent of that burden. In the instant case, we are reviewing the Commission's ultimate finding of

*Commissioner*, 86 T.C. 1253, 1259 (1986); *Famularo v. Commissioner*, 47 T.C.M. (CCH) 948, 952 (1984); *Fahy*, 43 T.C.M. (CCH) at 394. Where fraud is asserted for several years, the Commission's burden must be met separately for each of those years. *Fahy*, 43 T.C.M. (CCH) at 393.

 Because direct evidence of a taxpayer's intent is often nonexistent, specific intent must be drawn from the surrounding facts, considering reasonable inferences drawn therefrom. The mere failure to file an income tax return is not sufficient to prove fraud. *Kotmair*, 86 T.C. at 1260–61. However, the failure to file a return while aware of the obligation, combined with other factors such as the concealing of assets and records or the failure to maintain proper records to indicate income, may support a finding of fraud. *Famularo*, 47 T.C.M. (CCH) at 953; *Fahy*, 43 T.C.M. (CCH) at 394–95; *Cummings v. Commissioner*, 27 T.C.M. (CCH) 273, 279 (1968). The United States Supreme Court has stated with respect to the federal crime of willful intent to evade income tax:

> By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

*Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). Although the acts referred to in the quotation evidence the crime of fraud, they may also evidence the conduct that is subject to civil fraud. The Tax Court has found similar conduct subject to civil penalties for income tax fraud. *See, e.g., Famularo*, 47 T.C.M. (CCH) at 953–54 (failure to file returns, combined with noncredible excuses for failing to file, failing to produce business

records without an acceptable excuse, and misleading tax agents in interviews); *Fahy*, 43 T.C.M. (CCH) at 394–95 (failure to file tax returns while aware of the obligation, combined with customers' agreement not to withhold income tax for petitioner, attempts to conceal assets and records and failure to keep records, and noncredible explanation for receipt of federal reserve notes as not constituting receipt of income); *Cummings*, 27 T.C.M. (CCH) at 279 (failure to file returns without reasonable explanation, combined with failure to maintain proper records of income and refusal to cooperate with tax agents).

 We now turn to the instant case. Mr. Jensen failed to file tax returns, although aware of the obligation to do so. This is evidenced by the Jensens' filing in 1977, the Commission's notifying them of the particular statute codifying the obligation, and the undisputed testimony that Mr. Jensen realized income from Sound Concepts. The Jensens' argument that because the federal government has not assessed federal income taxes against them they could not owe state income tax is unpersuasive and unreasonable. Moreover, judging from the nature and quality of documents and letters submitted by Mr. Jensen to the Commission and this Court, it appears that he is a sophisticated businessman and well aware of the income tax provisions of the Code and of his obligation to file returns.

 The form that Mr. Jensen filed in 1978 is not a return as a matter of law. The information sought on income tax returns does not fall within the fifth amendment privilege against self-incrimination. *First Federal Savings & Loan Assoc. v. Schamanek*, 684 P.2d 1257, 1265 (Utah 1984); *United States v. Sullivan*, 274 U.S. 259, 263–64, 47 S.Ct. 607, 607, 71 L.Ed. 1037 (1927); *United States v. Stillhammer*, 706 F.2d 1072, 1076 (10th Cir.1983); *United States v. Brown*, 600 F.2d 248, 252 (10th Cir.1979); *United States v. Carlson*, 617 F.2d 518, 522–23 (9th Cir.1980); *State*

fraud; therefore, the burden in the proceedings below is not at issue.

*v. Poncelet,* 187 Mont. 528, 610 P.2d 698, 707 (1980).

In addition to his intentional failure to file returns while aware of the obligation, Mr. Jensen failed to keep any business or income records from Sound Concepts and continuously attempted to impede the Commission and its investigation with evasive letters and frivolous arguments. In sum, we hold that the Commission's finding of fraud against Mr. Jensen for the years in question is adequately supported by the evidence.

The Commission's ruling on the penalty is not entirely correct, however. The Commission affirmed the 100% fraud penalty for all years in question, 1978 to 1988. But, as noted above, the Code in effect between 1978 and 1986 provided that the civil penalty for a tax deficiency due to fraud was 50% of the deficiency. Utah Code Ann. § 59–14A–89(c) (1974, Supp. 1983, & Supp.1986). It was not until 1987 that the 100% penalty for fraud with intent to evade was codified. Utah Code Ann. § 59–10–539(3) (1987) (referencing § 59–1–401). The Legislature intended the 1987 penalty to be retroactive only to January 1, 1987. *See* 1987 Utah Laws ch. 2, § 331. This plain error renders the Commission's ruling unlawful as to the years 1978 to 1986. On remand, the Commission is to apply the appropriate penalty for these years of the assessment.

### *Jeopardy Assessment*

 The Jensens argue for the first time on appeal that the Commission's confiscation of their property under a jeopardy assessment was a violation of due process because of the lack of notice.

Pursuant to Utah Code Ann. § 59–10–528(3) (1987), if the Commission finds that "the collection of the tax or other amount is in jeopardy," it may make a notice of demand for immediate payment and, upon refusal to pay, issue a warrant to the sheriff. The warrant, when filed with the appropriate county clerk, becomes a judgment on which the sheriff may execute. § 59–10–528(4), (6).

Whether the Commission made the requisite finding that the collection of tax from the Jensens was in jeopardy and whether the judgment was properly executed are not part of the record because the issue was not raised below. Questions not raised in an administrative tribunal are generally not subject to judicial review. *Alvin G. Rhodes Pump Sales v. Industrial Comm'n,* 681 P.2d 1244, 1249 (Utah 1984). Although we occasionally will depart from strict application of this rule for pro se litigants, we do not do so here because the Jensens' assertion that the Commission's jeopardy assessment violated due process was not supported by any attempt to outline the underlying facts and was without analysis or authority. We cannot rule in the dark on such an issue. *See A.P. Winter v. Northwest Pipeline Corp.,* 820 P.2d 916, 919 (Utah 1991). The argument is therefore rejected as untimely.

Reversed in part and remanded for further proceedings.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.