JOSEPH FAMULARO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Famularo v. Commissioner
Docket No. 19311-81.
United States Tax Court
T.C. Memo 1984-37; 1984 Tax Ct. Memo LEXIS 635; 47 T.C.M. (CCH) 948; T.C.M. (RIA) 84037; January 19, 1984. Santo J. Bonanno, for the petitioner. Daniel K. O'Brien, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION
*636 KORNER, Judge: Respondent determined deficiencies in petitioner's Federal income taxes plus additions to tax under sections 6653(b) and 6654, [1] for taxable years 1972 through 1976, inclusive, as follows: Additions to tax
Taxable Year Ended
Deficiency
Sec. 6653(b)
Sec. 6654
(fraud)
(estimated tax)
December 31, 1972
$923.99
$461.99
$29.52
December 31, 1973
1,417.69
708.84
45.24
December 31, 1974
1,043.53
521.76
33.29
December 31, 1975
6,937.83
3,468.91
313.78
December 31, 1976
1,198.63
599.31
46.74
The issues for decision herein are as follows: (1) Whether petitioner is entitled to adjustment of his gross income, as determined by respondent for each of the taxable years in issue by the bank deposits and cash expenditures method, for certain business expenses incurred in his clothing sales and entertainment agency businesses, and/or for the cost of goods sold in his clothing sales business; and (2) whether petitioner is liable for additions to tax under section 6653(b) for fraud. *637 FINDINGS OF FACT Some of the facts have been stipulated, and are found accordingly. The stipulation and the exhibits attached thereto are incorporated by this reference. At the time of filing his petition herein, Joseph Famularo (hereinafter referred to as "petitioner") resided in Kearny, New Jersey. At all times here pertinent, petitioner was married, but living separately from his wife. For taxable years 1969, 1970 and 1971, petitioner separately filed Federal income tax returns reflecting wage income in the respective amounts of $4,429.54, $6,199.55, and $792.46. Each such return was prepared for petitioner, who had attained a third-grade education, by his wife, who was a professional bookkeeper. For taxable years 1972 through 1976, inclusive, however, petitioner failed to file Federal income tax returns. During 1972 through 1976, petitioner, who also used the name "Joe Fame," owned and operated in rented premises located at 596 Ridge Road in North Arlington, New Jersey, a women's clothing business, styled "Joe Fame's Fashions," selling synthetic furs, ski wear and other cold-weather apparel. Beginning in July 1974, and continuing through 1976, petitioner also *638 operated out of the same commercial premises at 596 Ridge Road, a service business, supplying bands and female "go-go" dancers to various restaurants and bars located in New Jersey and other states. For 1975 and 1976, petitioner provided temporary and transient lodging for a number of such dancers at a basement apartment located on Kearny Avenue in Kearny, New Jersey, for which petitioner paid the rent, at the rate of $200 per month. Petitioner maintained a telephone at his Ridge Road business premises. The telephone was listed with the telephone company under the name "Ted Wall," rather than under petitioner's name or under the names of either of his businesses. During 1977 and 1978, petitioner was under criminal investigation by respondent's special agents relative to his taxable years 1972 through 1976. On April 14, 1977, at an interview between respondent's agents and petitioner, he stated that he received commissions of between 10-15 percent in connection with his entertainment agency, usually by check. Petitioner further stated that all business receipts deriving from his entertainment agency business, including entertainers' fees and his commissions, were deposited *639 to his bank accounts. In fact, some such checks were not deposited to petitioner's bank accounts, or were deposited only in part. Petitioner admitted to respondent's agents his failure to file Federal income tax returns for taxable years 1972 through 1976, and attributed such failure to his wife's advice to him that he had insufficient income in each such year to require him to file. Finally, petitioner advised respondent's agents that all of his business records were being maintained at his wife's residence, and that he would turn such records over to special agent Richard McCarthy. Petitioner did not produce for respondent's agents during the foregoing investigation, and has not produced since, books or records of any of his business activities during any of the taxable years in issue here. During the night of August 29, 1977, petitioner's business premises at 596 Ridge Road in Kearny was burglarized. By letter dated September 5, 1977, referencing the burglary, petitioner advised his insurance agent, Liva-Tuzzio, Inc., of his resulting losses. Enumerating his losses under three headings, "Stock Clothing Lost," "Personal Property Lost," and "Repair Costs," petitioner provided *640 his estimated values for each lost item listed, with the exception of one entry under the "Personal Property Lost" heading, for which no value was reflected, as follows: PERSONAL PROPERTY LOST: 1 clock radio
$30     1 television set
150     1 box personal jewelry
120     1 digital clock radio
60     1 suitcase (personal clothing)
80     3 men's suits (three-piece)
85 each
1 attache' case containing all
bills and records [Emphasis added.]
1 cash box containing $20 cash
plus personal papers.
During the taxable years in issue, petitioner maintained certain checking and savings accounts at the First National Bank and Trust Co. in Kearny, New Jersey. Petitioner's income for each of these years is reflected, at least in part, in his net bank deposits relative to these accounts, as follows: TAX YEAR
GROSS DEPOSITS
INTERBANK
NET
[2] TRANSFERS DEPOSITS
Checking Accounts
Savings Account
261-844-7
262-582-8
4-2115
1972
$6,595.50
$6,595.00
1973
[3] 9,017.30
$3,000.00
$ (2,000.00)
10,017.30
1974
[4] 9,118.50
9,118.50
1975
26,128.23
$1,560.31
3,980.00
31,668.54
1976
3,631.00
6,506.52
75.00
( 250.00)
9,962.52
*641 By notice of deficiency dated April 17, 1981, respondent determined petitioner's gross income based upon the above net bank deposits (as corrected) for the years 1972 through 1976, inclusive. In addition, the deficiency notice allowed petitioner for each taxable year the standard deduction, a single personal exemption, and certain deductions for business expenses, as follows: BUSINESS EXPENSES
STANDARD
PERSONAL
DEDUCTION
EXEMPTION
Rent
Utilities
Telephone
Automobile
1972
250.00
100.00
1,440.00
720.82
750.00
1973
1,500.00
600.00
1,440.00
995.89
750.00
1974
1,500.00
600.00
1,800.00
783.39
750.00
1975
1,500.00
600.00
1,800.00
1,300.00
750.00
1976
1,250.00
500.00
520.46
1,800.00
1,020.05
750.00
*642 During each of his taxable years 1974, 1975 and 1976, petitioner received and deposited into the foregoing bank accounts, one or more loans from the First National Bank and Trust Co. in Kearny in the respective total amounts in each such year of $1,300, $4,450 and $2,000. Such loans were not eliminated by respondent in reconstructing petitioner's income under the bank deposits method. With respect to the business expenses allowed by respondent, as above, the allowance for rent was solely for the shop premises on Ridge Road, and included no allowance for rent on the living quarters which petitioner maintained in Kearny in 1975 and 1976 for his dancers. A part of the underpayment of tax in each year was due to petitioner's fraud. OPINION The parties have stipulated herein, and we have found, that petitioner failed to file Federal income tax returns for taxable years 1972 through 1976, inclusive. We have also found that petitioner, alleging that his books and records were stolen during a burglary of his business premises during the night of August 29, 1977, failed to produce for respondent's agents, books and records relating to his business activities at 596 Ridge Road in *643 North Arlington, New Jersey. In these circumstances, respondent may prove the existence and amount of unreported income by any method that will, in his opinion, clearly reflect petitioner's income. Section 446(b). See ; , petition for cert. filed May 31, 1983; . It is well established that the use of the bank deposits and cash expenditures method constitutes one such acceptable method of reconstructing income. ; , affd. ; ; , affd. . Where, in the absence of adequate books and records, respondent has employed the bank deposits and cash expenditures method of reconstructing taxable income, it is *644 petitioner who bears the burden of proving error in respondent's determinations. ; , affg. in part a Memorandum Opinion of this Court. Cf. , affg. a Memorandum Opinion of this Court. The fact that petitioner's books and records might have been stolen, moreover, does not diminish his burden of proving any error in respondent's determinations, particularly in the absence of any evidence that such books and records, if available and produced, would have sufficed to clearly reflect petitioner's income. [5]
Petitioner does not contest respondent's use of the bank deposits method of determining his taxable income for the years in issue, but contends that respondent failed to account for various business expenses and costs of goods sold which would reduce that taxable income for each such year. Thus, in his petition, petitioner seeks *645 reduction of his taxable income, as determined by respondent, for the following: (1) Petitioner's cost of goods sold in his women's clothing sales business; (2) salaries for go-go dancers employed by petitioner's agency, which according to petitioner, were received by him together with his 10 percent commission directly from the bar or restaurant client, deposited to his bank accounts, and then paid out to the appropriate dancers; (3) rents paid by petitioner to provide lodging for go-go dancers placed by his agency; and (4) telephones, entertainment and gifts, utilities and automobile business expenses. In addition to the foregoing items, the petition sets forth claimed credits for interbank transfers in 1975 and 1976, in the respective amounts of $6,000 and $3,000. At trial, petitioner adduced no evidence concerning the foregoing alleged interbank transfers in 1975 and 1976, and without explanation on brief, petitioner apparently abandoned his claimed credits for these transfers. In addition, petitioner on brief substantially revised his claims for reduction of the taxable income computed by respondent, as follows: (1) Petitioner increased significantly his claimed expenses for *646 cost of goods sold, dancers' salaries, rents, and telephone; (2) petitioner deleted his claimed business deductions for entertainment and gifts, utilities and automobile expenses, and added claimed business deductions for advertising and stationery expenses as well as claimed deductions for depreciation of certain fixtures allegedly installed by petitioner at his business premises in connection with starting up his women's clothing sales business. As we have stated, it is petitioner who bears the burden of proving each of the adjustments to gross income he contends for herein. This record, however, discloses a complete failure of credible proof with respect to the adjustments sought by petitioner for costs of goods sold, dancers' salaries, telephone, utilities, automobile, entertainment and gifts, advertising and stationery expenses. In each such instance, petitioner's testimony was the principal or sole evidence presented, and in each such instance, that testimony was vague and unconvincing. The greatest adjustments sought by petitioner in each tax year relate to costs of goods sold by Joe Fame's Fashions and to salaries for dancers placed by his entertainment agency. As to *647 the cost of goods claim, petitioner offered no evidence to corroborate either his claim that he incurred such costs or his own estimations of the amount thereof, thereby failing to meet his burden of proving such costs. As to the dancers' salaries claim, petitioner asks that we allow him to deduct from gross income, as determined by respondent, the 90 percent portion of certain of his bank deposits during tax years 1974, 1975 and 1976, which allegedly represented dancers' salaries received from his clients and then paid out to such dancers. We note initially that petitioner has adduced no evidence to differentiate bank deposits deriving from his entertainment agency business, to which his claim might apply, from any deriving from his clothing sales business, to which it would not apply. Furthermore, petitioner's claim with respect to dancers' salaries depends upon proof of the extent to which: (1) Petitioner's receipts from client bars or restaurants in exchange for entertainment services included both his commission and dancers' salaries; (2) such receipts were deposited into his foregoing bank accounts; and (3) such receipts were in fact paid out of such accounts to the dancers. *648 Petitioner's proof, which consisted principally of his own testimony, failed to credibly establish these necessary evidentiary links in his legal argument on this point. Respondent's determination allowed petitioner certain business deductions for rent, utilities, telephone and automobile expenses. Petitioner has offered no evidence that he ever incurred the additional telephone, utilities or automobile expenses, or the entertainment and gift, advertising or stationery expenses contended for, and has therefore failed to prove error in respondent's determinations relative to such items. Petitioner urges us, in accordance with and , to "make such allowance for the sums expended as [we] conscientiously [feel] would represent fair and reasonable expenses." . It is a necessary predicate for making such an allowance, however, that "the evidence is convincing that expenditures have thus been made, but the taxpayer is able to furnish only general proof of their nature and details * * *." . Since *649 petitioner has failed to convince us that any of the foregoing expenditures were ever incurred, we are unable to make the allowances contended for. Finally, in addition to the rental deduction allowed by respondent for his business premises at 596 Ridge Road, petitioner seeks a deduction for lodging facilities he provided for go-go dancers placed by his entertainment agency during tax years 1975 and 1976, and during part of tax year 1974. On this issue, petitioner's testimony as to the years 1975 and 1976 was corroborated by James Sylvester, owner of the building at 191 Kearny Avenue in Kearny, New Jersey, in which such facilities were located, who testified that petitioner "rents the basement, I have a commercial apartment in the basement * * *. He uses it for girls that go on the road. They come in, they stay there one or two days, and they go on the road and so forth * * * they're in and out." Mr. Sylvester also corroborated petitioner's claim that he paid rental for such facility in the amount of $200 per month. On this record, we believe that petitioner's maintenance of this lodging facility at a cost of $200 per month, constituted an ordinary and necessary expense of his *650 entertainment agency business throughout taxable years 1975 and 1976, but not during taxable year 1974. Pursuant to section 162(a), petitioner is accordingly entitled to a business deduction of $2,400 in each such year. We have found that petitioner received and deposited to his bank accounts loans from the First National Bank and Trust Co. in Kearny during 1974, 1975 and 1976, in the respective amounts of $1,300, $4,450 and $2,000. The total amount of the loans, and the years, were stipulated by the parties; the fact of depositing these loans in the bank was not. While the evidence on this point was not conclusive, we believe that it is more reasonable to conclude on this record that these loans went into the bank than it is to conclude that petitioner walked around the streets of northern New Jersey with such amounts of cash in his pocket. Since such loans were not eliminated by respondent in reconstructing petitioner's income under the bank deposits method for those years, we hold that petitioner is entitled to reduction of his gross income in the amount of such loans for tax years 1974, 1975 and 1976. With the exception of these two adjustments, and adjustments required *651 by corrections of the deficiency notice noted in our findings, however, petitioner's case reflects a complete failure of credible proof, and the determinations of respondent must stand. The next issue for decision is whether any part of the underpayment of tax for any of the taxable years 1972 through 1976 was due to fraud within the meaning of section 6653(b). Pursuant to that section, if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Respondent has the burden of proving by clear and convincing evidence that some part of the underpayment for each year was due to fraud. Section 7454(a); Rule 142(b); . Respondent will meet this burden if he shows that petitioner intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. , cert. denied ; , *652 affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. , affd. . Based upon our examination of the record before us, we must conclude that there exist sufficient indications of fraud to support respondent's determination under section 6653(b). Petitioner filed returns for tax years 1969, 1970 and 1971, reporting wage income in the respective amounts of $4,429.54, $6,199.55 and $792.46. Each such return was prepared for petitioner, who had attained only a third-grade education, by his wife, who was a professional bookkeeper. At trial, petitioner admitted to having gross sales from his women's clothing business of between $9,000 and $10,000 in each of taxable years 1973, 1974 and 1975; additional income derived from his entertainment agency business in 1974 and 1975, including at least $16,000 in gross receipts from one club in the latter year; and a total of approximately $10,000, derived from both of his businesses, in taxable year 1976. Despite petitioner's admitted receipt in *653 each of the taxable years in issue of income significantly in excess of the $792.46 in wage income he reported in 1971, petitioner failed to file a tax return for each of taxable years 1972 through 1976, inclusive. The only explanation offered by petitioner for such failure was that he was advised by his wife in each such year that his income was insufficient to require him to file. Petitioner's wife was not called to testify at trial, and no evidence was offered to corroborate petitioner's explanation for his failure to file. In the absence of any corroborative evidence, and in light of the fact that petitioner's wife was, as described by petitioner, an "experienced bookkeeper," who had prepared his returns for all prior taxable years, and who had advised him during the years in issue, we conclude that petitioner's explanation for his failure to file in taxable years 1972 through 1976, was not credible. Further, the fact that petitioner filed returns for each of the three years preceding taxable year 1972, including a taxable year when his total income was reported as $792.46, indicates that petitioner was aware of the requirement that he file returns correctly showing his income *654 and income tax liability for each of the tax years in issue. Such a knowing failure to file, without credible explanation, constitutes a clear and persuasive indication of fraud. ; ; . Furthermore, as stated by the Supreme Court, a fraudulent intent may be found in the "destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." . Petitioner failed to produce for respondent's agents any records relating to either of his two businesses for the taxable years in issue. According to petitioner's statement to respondent's special agents in April 1977, all of his business records were maintained at his wife's house. After petitioner's wife assembled such records on his behalf, however, he left them in an attache' case at his business *655 premises intending to transmit them to respondent's agents. Petitioner testified that all such records were stolen during a burglary of such business premises on August 29, 1977, as follows: I had records. When they got in touch with me, I had them all in the store, and I was ready to give it to them. In the area, which there is a police report, there were six stores in two weeks robbed.The Jade Fountain was robbed two nights before me. Someone pushed in my back door. I left the place at 10 o'clock at night. They pushed in the back door, took my coats, everything, they cleaned me out. I had suitcases which I kept my records in, they cleaned me out. [6]
The only evidence offered by petitioner to corroborate the foregoing explanation for his failure to produce business records, were his after-the-fact communications with his insurance agent, Liva-Tuzzio, Inc., including the September 5, 1977 letter excerpted *656 in our findings of fact. Like the burglary to which it relates, the subject letter was dated over four months after petitioner was interviewed by respondent's special agents, and during the pendency of their continuing criminal investigation. Petitioner's reliance upon this letter to explain his failure to produce business records rests solely upon the inclusion therein, as part of an enumeration of his losses resulting from the burglary, of the alleged loss of "1 attache' case containing all bills and records." While every other loss alleged in such letter is accompanied by an estimation of value, however, no value is attributed therein to the loss of petitioner's books and records, making it difficult to understand why that item was included in the letter at all. We need not resolve that question, however, since it is sufficient to conclude, as we do, that petitioner's explanation for his failure to produce business records rests upon an evidentiary foundation which is, at bast, unacceptably weak. In light of the unacceptability of petitioner's explanation for his failure to produce business records, we can only conclude that petitioner either failed to keep business records *657 for the taxable years in issue, destroyed such records, or willfully failed to make them available to respondent. Any one of these actions is evidence of petitioner's fraudulent intent. , affg. a Memorandum Opinion of this Court; . [7]
Conduct by a taxpayer designed to mislead respondent's agents and to conceal income also evidences an intent to evade tax. , cert. denied , affg. a Memorandum Opinion of this Court; ; . In this case, petitioner told respondent's agents during an interview in April 1977, that all receipts from his entertainment agency business were deposited to his bank accounts. Contrary to this averment, however, respondent demonstrated and we have found that a number of such checks were not deposited *658 to his bank accounts, either in whole or in part. This disparity evidences the type of willful concealment and deceit which is a further indication of fraud. [8]
For the foregoing reasons, we conclude that respondent has met his burden of demonstrating that part of the underpayment for each of the taxable years in issue was due to petitioner's fraud, and we sustain the resulting additions to tax determined under section 6653(b). [9]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all references to the Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.↩
2. These figures represent credits for transfers from one listed bank account to another. ↩
3. This figure, listed in the deficiency notice as $9,179.30, was corrected in the stipulation of the parties to reflect the $9,017.30 figure shown. ↩
4. This figure, listed in the deficiency notice as $9,122.65, was corrected in the stipulation of the parties to reflect the $9,118.50 figure shown.↩
5. See Stokes v. Commissioner,↩ a Memorandum Opinion of this Court dated June 20, 1949, affd. .
6. Why petitioner determined that this tidy assemblage of five years of business records from two businesses should be moved to and maintained at his business premises, in an area wherein "there were six stores in two weeks robbed," is unanswered on this record.↩
7. See also .↩
8. See .↩
9. Petitioner has not challenged respondent's determinations of additions to tax for failure to pay estimated tax under section 6654.↩